# In the United States Court of Appeals for the Fifth Circuit

John Doe, Medical Doctor,
Doctor of Philosophy,

*Plaintiff-Appellant*,

v.

United States Department of Health
and Human Services,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division

## REPLY BRIEF FOR APPELLANT

Judd E. Stone II
Michael R. Abrams
Caroline A. Merideth
Cody C. Coll
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

*Counsel for Plaintiff-Appellant
John Doe*

# TABLE OF CONTENTS

Table of Contents ........................................................................................... i

Table of Authorities ...................................................................................... ii

Introduction ...................................................................................................1

Argument........................................................................................................3

    I.  The District Court Wrongly Dismissed Doe's APA claim. ........................3

    II. The District Court Improperly Dismissed Doe's As-Applied Due Process
       Claim. .................................................................................................12

Conclusion ...................................................................................................17

Certificate of Service ...................................................................................18

Certificate of Compliance ...........................................................................18

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................5

*Chevron Oil Co. v. Andrus*,
  588 F.2d 1383 (5th Cir. 1979)....................................................................8

*Chevron USA, Inc. v. Aker Mar. Inc.*,
  689 F.3d 497 (5th Cir. 2012)....................................................................15

*Copeland v. Merrill Lynch & Co., Inc.*,
  47 F.3d 1415 (5th Cir. 1995).....................................................................12

*Darlak v. Bobear*,
  814 F.2d 1055 (5th Cir. 1987)...................................................................15

*Doe v. Rogers*,
  139 F. Supp. 3d 120 (D.D.C. 2015) ..........................................................10

*Doe v. William Marsh Rice Univ.*,
  67 F.4th 702 (5th Cir. 2023)......................................................................16

*Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*,
  145 S. Ct. 898 (2025) ..................................................................................8

*Greene v. McElroy*,
  360 U.S. 474 (1959) ...................................................................................16

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .............................................................................. 16, 17

*Hous. Pro. Towing Ass'n v. City of Houston*,
  812 F.3d 443 (5th Cir. 2016)....................................................................13

*Hurd v. Univ. of Tx. Health Sci. Ctr. at S.A.*,
  No. SA-09-CA-645-FB, 2012 WL 13076603 (W.D. Tex. Aug. 17, 2012) .........15

*I.C.C. v. Bhd. of Locomotive Eng'rs*,
  482 U.S. 270 (1987) ................................................................................1, 4

*Johnson v. Estelle*,
  625 F.2d 75 (5th Cir. 1980)......................................................................14

*Kartseva v. Dep't of State*,
  37 F.3d 1524 (D.C. Cir. 1994) ..................................................................15

*Leal v. United States Department of Health and Human Services*,
620 F.3d 1280 (11th Cir. 2010)............................................................16

*Middaugh v. InterBank*,
528 F. Supp. 3d 509 (N.D. Tex. 2021)..................................................14

*Palacios v. Spencer*,
906 F.3d 124 (D.C. Cir. 2018) ...............................................................4

*Ramirez v. Ahn*,
843 F.2d 864 (5th Cir. 1988)................................................................15

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
626 F.3d 84 (D.C. Cir. 2010) ...............................................................11

*Smalls v. Spencer*,
No. CV 17-606 (TJK), 2021 WL 289382 (D.D.C. Jan. 28, 2021).........5

*Test Masters Educ. Servs., Inc. v. Singh*,
428 F.3d 559 (5th Cir. 2005)................................................................13

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) ...............................................................................8

*United States ex rel. Simmons v. Zibilich*,
542 F.2d 259 (5th Cir. 1976)................................................................14

*Utah v. Su*,
109 F.4th 313 (5th Cir. 2024).................................................................7

*Vill. of Barrington, Ill. v. Surface Transp. Bd.*,
758 F.3d 326 (D.C. Cir. 2014) .........................................................1, 6

*Vill. of Barrington, Ill., v. Surface Transp. Bd.*,
892 F.3d 252 (7th Cir. 2018)................................................................11

**Statutes**

42 U.S.C. § 11151(9) ................................................................................8

42 U.S.C. § 1396r-2 ..................................................................................3

5 U.S.C. § 706(2)(A)................................................................................11

**Other Authorities**

U.S. Dep't of Health & Human Servs.,
  Health Resources & Servs. Admin., NPDB Guidebook  (2001)................8, 9

U.S. Dep't of Health & Human Servs.,
  Health Resources & Servs. Admin., NPDB Guidebook (2018)..................8, 9

**INTRODUCTION**

The Secretary's response brief fails to salvage the district court's dismissal of Doe's APA and due process claims. Doe's complaint described the copious new evidence that he presented to the Secretary in December 2023. The Secretary's refusal to reconsider the agency's initial decision in the face of that evidence is reviewable under the APA. *See I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987) ("*BLE*"). Meanwhile, no court has considered whether the Secretary's denial of reconsideration violated Doe's procedural due process rights, so res judicata cannot bar Doe from proceeding with that claim. The district court erred in holding otherwise.

Apparently aware of these infirmities, the Secretary urges affirmance on grounds other than the ones that the district court relied upon. He argues, for example, that the new evidence that Doe presented was not "relevant or material" in the sense that it would not have changed the Secretary's original decision. But as the Secretary's own authority explains, "[w]hether this new evidence (and this new evidence only) was enough to warrant a change . . . is a merits question; it is not a question of jurisdiction." *Vill. of Barrington, Ill. v. Surface Transp. Bd.*, 758 F.3d 326, 328-29 (D.C. Cir. 2014). The Secretary can press materiality arguments to the district court on remand, and Doe will counter them. But the Secretary's merits contentions about the scope and effect of the new evidence were not briefed in the

district court and serve as no basis for affirmance based on the motion to dismiss that the Secretary filed.

As for the due process claim, the Secretary ignores the occasions that Doe, then proceeding pro se, unambiguously alleged a due process violation arising from the Secretary's failure to reconsider. The Secretary again pivots to the merits, positing that Doe did not plead a viable due process violation. Here, too, the Secretary is wrong. In the light of the allegations of sweeping and severe employment consequences from the continued release of the AAR to prospective employers and the Secretary's refusal to reconsider whether to void the AAR in the Data Bank, Doe has suffered a sufficient deprivation of his "liberty" interest in practicing his profession to trigger procedural due process. But more fundamentally for purposes of this appeal, the only argument that the Secretary pressed for dismissal of the as-applied procedural due process claim was that it was barred by res judicata. Nothing in the record supports a dismissal on the merits that the Secretary did not even insist upon in the district court.

At the close of his brief, the Secretary gratuitously and inaccurately accuses Doe of "relitigat[ing] his dispute indefinitely." HHS Br. 26. Even the report and recommendation from which Doe appeals noted that this was untrue. *See* ROA.312 ("[N]o court of competent jurisdiction has entertained, let alone entered a final judgment on the merits, on whether HHS's denial of Dr. Doe's reconsideration

request comported with the APA."). In any event, given the high stakes, Doe's approach to this litigation has been more than appropriate. The issues presented are enormously consequential and warrant careful attention, not just for Doe but for dedicated and conscientious healthcare professionals across the country. The Data Bank's reporting requirements cover all licensed healthcare practitioners, including physicians, dentists, nurses, social workers, therapists, nurses' aides, and countless others—approximately 20 million Americans. 42 U.S.C. § 1396r-2. All covered practitioners face the threat posed by potential AARs based on unknown investigations whenever they might change jobs. That threat is exacerbated by the Secretary's cabined review process that fails to provide a meaningful process for relief from AARs that should never have been submitted or maintained in the Data Bank to begin with. This suit simply insists that the Secretary must act consistently with his statutory and constitutional obligations to protect the interests of the public and healthcare workers alike. The Secretary persuaded the district court that Doe was barred from litigating those weighty issues. That judgment rested on multiple legal errors and should be reversed.

## ARGUMENT

### I.    The District Court Wrongly Dismissed Doe's APA claim.

In the fourth count of his complaint, Doe alleged that the Secretary violated the APA when he denied Doe's request for reconsideration. ROA.181-83. Although

the general rule is that an agency "has not rendered a judicially reviewable decision" under the APA when it "merely affirms its original decision in denying a petition for reconsideration," *Palacios v. Spencer*, 906 F.3d 124, 127 (D.C. Cir. 2018), this rule contains an important exception for allegations of "new evidence" or "changed circumstances," *BLE*, 482 U.S. at 278. Were it otherwise, "the petitioner will have been deprived of all opportunity for judicial consideration—even on a 'clearest abuse of discretion' basis—of facts which, through no fault of his own, the original proceeding did not contain." *Id.* at 279.

Doe explained in his opening brief (at 20-27) that he premised his request for agency reconsideration based on evidence that he acquired during the pendency of New York litigation against his former employer, the Peconic Bay Medical Center, between 2016 and 2023. ROA.182, 216. That evidence included testimony that the Hospital's investigation never contemplated corrective action, that the Hospital, through its counsel, submitted multiple documents falsely conveying that the Hospital placed Doe on suspension, and that the Hospital's investigation was a sham that never even evaluated whether Doe deviated from the medical standard of care. ROA.18, 42, 49, 72-74, 114. Doe highlighted that this evidence was unavailable to him because it was only uncovered after years of hard-fought state-court litigation following the Secretary's initial decision on the AAR in June 2012. ROA.114-16.

These are more than enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Doe's APA claim should have therefore been an open-and-shut case for application of the *BLE* exception based on the introduction of new evidence. The district court nevertheless found that Doe's reconsideration request was not "actually based on new evidence," ROA.314, because Doe was purportedly "in possession of all the evidence and could have had HHS review it before the D.C. district court ruled on his motion for re-argument and entered final judgment in that case," ROA.315. As Doe explained in his opening brief (at 23-24), the *BLE* inquiry hinges on whether evidence was available during the original *agency* proceeding—not whether it was available in follow-on litigation. *See, e.g.*, *Smalls v. Spencer*, No. CV 17-606 (TJK), 2021 WL 289382, at *4 (D.D.C. Jan. 28, 2021). The Secretary concedes, in fact, that "whether this newly generated evidence was available at the time of the original decision" is "relevant to the issue of whether judicial review is available" for Doe's APA challenge. HHS Br. 25.

In the light of that acknowledgement, the Secretary barely tries to defend the district court's misinterpretation of *BLE*. Instead, the Secretary insists that the new evidence was (1) previously available; (2) cumulative; and (3) not "relevant or material to the Secretary's original decision." HHS Br. 13. Each contention is wrong. As to the first, Doe specifically referenced and relied on information that was *only*

available because of the New York litigation (and, in the case of some documents, FOIA requests that the agency took four years to address). ROA.115-16. That information included documents that the Hospital would not have turned over, and depositions that Hospital employees would not have given, absent civil discovery obligations. ROA.116, 301-02. The Secretary does not contend that Doe should have accessed this information sooner, and for good reason. Litigation is often a costly and time-intensive endeavor, and Doe's state-court litigation against the Hospital was no exception. Even if Doe had vigorously litigated his breach-of-contract and tort claims against the Hospital when he learned of the false AAR in June 2010, that litigation would not have concluded until well after the Secretary's decision in 2012. ROA.114-16 (summarizing the history of the New York litigation).

The Secretary's second and third points—that the new evidence was cumulative and immaterial—amount to little more than a combined merits argument that the Secretary's denial of reconsideration was lawful. That inquiry, however, is wholly distinct from the question of whether the district court had jurisdiction to hear Doe's APA claim in the first instance. *Vill. of Barrington, Ill.*, 758 F.3d at 328-29. The district court considered (and erred in its application of) the jurisdictional question, and thus never reached the merits. This Court should not reach the merits either. As this Court recently put it, "[e]xploring ground not yet trodden by the district court . . . remains the narrow exception, and for good reason." *Utah v. Su*,

109 F.4th 313, 320 (5th Cir. 2024). The Secretary has not articulated any reason for this Court to "break out of [the] appellate mold" and decide an issue that the district court did not reach in the first instance. *Id.*

But even if the Court were to consider the Secretary's cumulativeness and materiality arguments, they would still serve no basis for affirmance. The evidence that Doe presented to the Secretary in 2023 was robust and damning. Most notably, he alleged that the Hospital took a new position during the state-court litigation that its 2009 investigation of Doe did *not* contemplate corrective action against Doe's clinical privileges. ROA.394; *accord* ROA.119-120, 127 (representations in New York courts), ROA.18 (admission by Hospital staff). This was not cumulative of information before the agency in 2012, and in fact flatly contradicted the Hospital's earlier representations to the Secretary. ROA.61, 63, 107 (describing the Hospital's statements that an investigation began and that Doe's privileges were restricted). Unsurprisingly, then, the Secretary's summary of Doe's contentions in the administrative review process reflects that Doe did not even discuss a "corrective action" or "professional review action" in contesting the AAR. *See* ROA.375.

This evidence is particularly potent because at the time that the Secretary considered Doe's first administrative appeal, the agency's published guidance explained that the "routine or general review of cases is not an investigation" and that an "investigation should be the precursor to a professional review action." U.S.

DEP'T OF HEALTH & HUMAN SERVS., HEALTH RESOURCES & SERVS. ADMIN., NPDB GUIDEBOOK, at E-19 (2001); U.S. DEP'T OF HEALTH & HUMAN SERVS., HEALTH RESOURCES & SERVS. ADMIN., NPDB GUIDEBOOK, at E-37 (2018) ("To be considered an investigation for purposes of determining whether an activity is reportable, the activity generally should be the precursor to a professional review action."); *see also* 42 U.S.C. § 11151(9) (defining "professional review action" as an action "which affects . . . adversely the clinical privileges . . . of the physician"). Doe plausibly pleaded that the newly disclosed absence of any intent on the Hospital's part to discipline him should have been relevant to—if not dispositive of—the Secretary's reconsideration decision. It would have been unlawful under various administrative-law principles for the Secretary to disregard the agency's own directives. After all, no one disputes the "unremarkable proposition," announced in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). And at bottom, "an agency should not mislead regulated entities," *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 917 (2025), which is exactly what Doe alleges happened here.

This analysis applies with equal force to evidence that during the New York litigation, Hospital administrators admitted that the Hospital never suspended Doe's clinical privileges, that the Hospital submitted erroneous reports stating otherwise,

that they knew in 2009 that the Hospital's reports in that regard were erroneous, and that they never corrected the error. ROA.18, 42, 62-63, 71-74, 79-80, 394. The Secretary attempts to minimize the Hospital's about-face as inconsequential testimony by "some employees."  HHS Br. at 19.

It was far more than that. The Secretary's then-guidance mandated that healthcare entities report a covered employee who resigned during a suspension. 2001 NPDB GUIDEBOOK, *supra*, at E-20; *see also* 2018 NPDB GUIDEBOOK, *supra*, at E-39. To that end, Doe alleged that the "statement of suspension" is what "led HHS to declare PBMC's review 'an investigation' of Dr. Doe's competence rather than a 'routine review' of case with a complication." ROA.69. As Doe mentioned above, the documents that the Hospital submitted to the agency during the administrative review process were replete with references to the false suspension. ROA.61. Said differently, the Hospital's representations that it suspended Doe played an outsized role in the agency's calculus. Indeed, the June 2012 administrative review decision emphasized three different times that the Hospital had suspended Doe's privileges. ROA.376. Conversely, the Hospital's decision *not* to suspend Doe undermines the notion that there was an investigation into whether to restrict or revoke his clinical privileges.

Third, and relatedly, the complaint incorporates by reference the extensive documentary evidence from the New York litigation that the Hospital's

"investigation" and conclusion, all without Doe's participation, was a sham—including evidence that the Hospital spoliated all emails from every account belonging to the named Hospital defendants located on the Hospital's server for the period from October 5, 2009 through March 28, 2012 (the approximate timeframe of the surgery until the end of the administrative review process). ROA.115.

In this context, Doe's reference to the fact that Dr. Hannah Ortiz, a gynecological oncologist, did not attend the root cause analysis meeting is relevant because she could not have made the comments about clinical performance that the Hospital attributed to her in the root cause analysis or physician peer review. Doe Br. 12; ROA.43-45. The Secretary's argument that Dr. Ortiz's attendance was not dispositive in the D.C. litigation, and therefore is not new or material, mischaracterizes the D.C. proceedings and this one. HHS Br. 22-23. Whether Dr. Ortiz attended the root cause analysis meeting was immaterial in those proceedings because the district court concluded "there [wa]s no dispute that [Dr. Ortiz] was consulted about the surgical incident by a member of the committee." *Doe v. Rogers*, 139 F. Supp. 3d 120, 143 (D.D.C. 2015) ("*Doe I*"). Doe's new evidence from Dr. Ortiz's deposition testimony indicates that this fact is in dispute. ROA.44-45.

The state-court record that Doe presented to the Secretary therefore provides a great deal beyond simple "insight" into the administrative record that the Secretary considered the first time through. *Vill. of Barrington, Ill., v. Surface Transp. Bd.*,

892 F.3d 252, 270 (7th Cir. 2018); *contra* HHS Br. 11. Doe has plausibly pleaded that this evidence, viewed in isolation and in combination with the facts that Doe already presented, should have led the Secretary to reconsider the agency's initial decision. *E.g.*, ROA.24, 29-30 (Dr. Richard Kubiak assured Doe on October 5 and 7, 2009 that Doe was not under investigation); *see* Doe Br. 9, 12. The Secretary's failure to do so violated the APA because it was arbitrary or capricious. ROA.183; 5 U.S.C. § 706(2)(A).

In the light of these comprehensive pleadings, the Court cannot and need not credit the Secretary's litigation position that Doe's evidence "is immaterial to the Secretary's original decision." HHS Br. 16. In fact, that bald assertion only proves Doe's point. If the Secretary could look at the record that Doe compiled and nonetheless consider it immaterial, the refusal to reconsider was arbitrary or capricious in violation of the APA—just as Doe alleged. The district court will be appropriately positioned to consider these various issues on remand.[*]

The Secretary's remaining arguments are likewise unavailing. The reference (at 1, 13) to the abuse-of-discretion standard of review is strange, given that

---

[*] For avoidance of doubt, Doe preserves all merits-based arguments at future stages of the litigation, including the unlawfulness of the agency's post hoc rationale for its denial of reconsideration. *See Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94 (D.C. Cir. 2010); *compare* ROA.129-30 (denying reconsideration based on exhaustion), *with* HHS Br. 13 (claiming that the evidence that Doe submitted was not material to the agency's initial decision).

elsewhere (at 8-9, for example), the Secretary recognizes that well-pleaded facts in a complaint must be accepted as true. In both the district court and this Court, Doe thoroughly briefed the facts that the district court refused to credit. *See* Doe Br. 21-22; ROA.394. Doe did not forfeit any argument supporting reversal. Lastly, the Secretary's accusation (at 20-21) that this case merely rehashes *Doe I* is baseless. The first page of Doe's complaint makes clear what this suit is about: "This lawsuit, *inter alia*, challenges HHS's January 30, 2024-decision." ROA.7. Doe's claims here do not depend on whether *Doe I* was correctly decided because that case concluded well before the facts that gave rise to this suit. If anything, the Secretary's suggestion that the Court adopt the reasoning in *Doe I*—its definition of "investigation," for example—is an improper backdoor effort to constrain Doe's APA claim based on collateral estoppel principles. *See Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995). The district court already rejected that effort, ROA.312-15, as should this Court.

## II. The District Court Improperly Dismissed Doe's As-Applied Due Process Claim.

In Count Three of his Complaint, Doe raised an as-applied procedural due process claim targeted at the Secretary's failure to reconsider his initial decision. ROA.145. He asserted: (1) that he was deprived of a protected property interest—the "destr[uction] of Dr. Doe's career as a physician and surgeon in the United States" due to "the false and fraudulent Adverse Action Report, knowingly

12

maintained by HHS"—and (2) that this deprivation was without due process. ROA.145. He also contended that "the agency's decision not to void the Adverse Action Report on the basis of the new evidence submitted to it . . . and to continue to maintain and publish the Adverse Action Report, is arbitrary, capricious, an abuse of discretion, contrary to law, and *contrary to constitutional right*." ROA.183 (emphasis added); *accord* ROA.181 ("[A] decision by the agency not to review new evidence and judicial estoppel and not to void the Adverse Action Report is a denial of Dr. Doe's constitutional right to due process."); ROA.223 ("The Complaint pleads that this improper agency decision not to review the new facts . . . has the effect of deprivation of Dr. Doe's Fifth Amendment right to due process . . . the Adverse Action Report has broadly precluded Dr. Doe from the practice of medicine in the United States.").

This claim is not barred by res judicata, which only prohibits the "litigation of claims that either have been litigated or should have been raised in an earlier suit." *Hous. Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). Doe did not even submit his request for reconsideration until December 18, 2023 (two months after the Supreme Court denied his petition for certiorari), and the request was not rejected until January 30, 2024. ROA.129, 182. A claim that did not arise before the conclusion of the prior action is not barred by res judicata. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

The Secretary does not dispute this well-worn framework. Instead, the Secretary's threshold argument for affirmance of the due process claim is that the length of Doe's pro se complaint excused the government from the careful reading of it that this Court's caselaw requires. A court is expected to exercise "'common sense' in interpreting" pro se pleadings, *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir. 1976) (citation omitted), and is to accord them a "liberal yet realistic construction." *Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir. 1980). Thus, the precise label that Doe placed on Count Three is not dispositive. *Contra* HHS Br. 23-24; *e.g.*, *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 537 (N.D. Tex. 2021) (evaluating claims brought by a plaintiff in the factual allegations section of his state-court petition). Doe has pointed out multiple instances that he connected the Secretary's failure to reconsider to the agency's lack of due process. ROA.145, 181, 223. That was more than enough to assert a claim for relief.

The Secretary also contends that Doe does not plead a viable due process claim. HHS Br. 24-26. In the district court, the Secretary did not advance any arguments for dismissal of Count Three (or any other claims) except for res judicata. *See* ROA.192 (framing the sole issue presented in the motion to dismiss as whether "this Court dismiss the present case based on res judicata?"). "Arguments not raised in district court will not be considered absent extraordinary circumstances," and the Secretary "points to no extraordinary circumstance" justifying a departure from that

rule. *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012) (cleaned up).

Even if the Court were to overlook the Secretary's forfeiture, Doe plausibly pleaded a due process violation. The complaint alleges that an AAR effectively destroys a physician's ability to practice a lawful profession. ROA.145; *see Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988) (providing "a reasonable, continued expectation of entitlement to a previously acquired benefit, such as a medical license, constitutes a cognizable property interest for purposes of due process protection"); *Darlak v. Bobear*, 814 F.2d 1055, 1061 (5th Cir. 1987) (well-settled a doctor's staff privileges may constitute a property interest); *Hurd v. Univ. of Tx. Health Sci. Ctr. at S.A.*, No. SA-09-CA-645-FB, 2012 WL 13076603, at *9 (W.D. Tex. Aug. 17, 2012) (finding property interest in clinical privileges). Here, the AAR falsely branded Doe as a physician who duplicitously resigned to avoid investigation into incompetence and misconduct. ROA.374-79.

After the publication of the AAR, hospitals have repeatedly told Doe they do not want to hire a physician with an AAR effectively accusing him of fleeing a position to avoid an investigation. ROA.55-56. Such private reactions to the AAR do not break the causal chain and negate a governmental deprivation where the AAR would not exist had Doe been afforded due process. *E.g.*, *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (liberty interest implicated by governmental

action having the "*broad* effect of largely precluding" plaintiff "from pursuing [his] chosen career"); *cf. Greene v. McElroy*, 360 U.S. 474, 492 (1959) (suggesting without deciding that government action that "seriously affected, if not destroyed, [a party's] ability to obtain employment in the aeronautics field" could trigger Due Process rights). The fact that the Secretary has published procedures, *see* HHS Br. 24-26, does not bar Doe's procedural due process claim in the light of their deficiencies. *E.g.*, *Doe v. William Marsh Rice Univ.*, 67 F.4th 702, 708 (5th Cir. 2023) ("[O]ur review of the record identifies multiple instances where the University's due process procedures were deficient in terms of its treatment of Doe."). The Secretary also leans heavily on *Leal v. United States Department of Health and Human Services*, 620 F.3d 1280, 1284 (11th Cir. 2010) for its dictum that what Hospitals do with AARs is "entirely up to the hospital." HHS Br. 5-6. But *Leal* is unhelpful because it involved a physician who at least knew he was under investigation (unlike Doe) and who did not pursue a procedural due process claim at all. 620 F.3d at 1282.

Finally, the Secretary appears to claim that the agency's refusal to reconsider is not an action that can underpin a due process claim at all. But the case that the Secretary cites, *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), involved the Food and Drug Administration's refusal to launch an enforcement action at the behest of prison inmates convicted of capital offenses and sentenced to death by lethal

injection of drugs. *Id.* at 823. It was that inaction that the Court suggested would not give rise to a due process claim. *Id.* at 832. This case, by contrast, involves the Secretary's *ongoing* publication of a false and career-destroying report in the very databank that the agency oversees. To put it mildly, that is a far cry from the inaction at issue in *Heckler*.

## CONCLUSION

The district court's judgment should be reversed.

Dated: June 2, 2025.  Respectfully submitted.

*/s/ Judd E. Stone II*
Judd E. Stone II
Michael R. Abrams
Caroline A. Merideth
Cody C. Coll
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
michael@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

*Counsel for Plaintiff-Appellant*
*John Doe*

## CERTIFICATE OF SERVICE

On June 2, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Judd E. Stone II*
Judd E. Stone II

## CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,028 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Judd E. Stone II*
Judd E. Stone II